**No. 24-1672**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MAAN ALJIZZANI

Plaintiff-Appellant

v.

MIDDLE EAST BROADCASTING NETWORKS, INC.

Defendant-Appellee

On Appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division
The Honorable Rossie D. Alston Jr.

## OPENING BRIEF FOR PLAINTIFF-APPELLANT

Dirk McClanahan, Esq.
(VSB# 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Phone: (703) 520-1326
Email: dmcclanahan@mcplegal.com
*Counsel for Plaintiff-Appellant*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS</u>

1. Is party/amicus a publicly held corporation or other publicly held entity?  NO

2. Does party/amicus have any parent corporations?  NO

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  NO

4. Is there any other publicly held corporation or other publicly held entity that has a directly financial interest in the outcome of the litigation?  NO

5. Is party a trade association?  NO

6. Does this case arise out of a bankruptcy proceeding?  NO


      _/s/ Dirk McClanahan_____
      Dirk McClanahan, Esq. (VSB# 81208)
      3160 Fairview Park Drive, Suite 410
      Falls Church, VA 22042
      Phone: (703) 520-1326
      Email: dmcclanahan@mcplegal.com
      ***Counsel for Plaintiff- Appellant***

## <u>TABLE OF CONTENTS</u>

Table of Contents.................................................................i

Table of Authorities ........................................................ ii

Jurisdictional Statement....................................................1

Statement of the Issues....................................................1

Statement of the Case .....................................................2

Statement of Facts ..........................................................3

Summary of Argument.....................................................7

Standard of Review .........................................................9

Argument......................................................................9

Conclusion ................................................................. 15

Request for Oral Argument ............................................ 15

Certificate of Compliance.............................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bing v. Brivo Sys., LLC*, 959 F.3d 605 (4th Cir. 2020) .............................9, 11, 13

*Coleman v. Maryland Court of Appeals*, 626 F.3d 187
(4th Cir. 2010) ....................................................................................................10

*Eaton v. Dep't of Corr.*, 657 F.3d 551 (7th Cir. 2011) ........................................ 13

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344
(6th Cir. 1998) ....................................................................................................13

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............................................................... 9

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ...................................13

*Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151 (9th Cir. 2010) ........................... 13

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219 (4th Cir. 2019) .....................13

*Louzon v. Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013).................................... 13

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) .............................................................................. 10

*McMillan v. Castro*, 405 F.3d 405 (6th Cir. 2005)...............................................13

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992) ......................................13

*South v. Ill. Env't Prot. Agency*, 495 F.3d 747 (7th Cir. 2007)............................ 13

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..........................................9-10

*Tinsley v. City of Charlotte*, 854 F. App'x 495 (4th Cir. 2021).....................11, 13

*Twombly*, 550 U.S. at 555, 127 S.Ct. (1955). ...................................................... 10

*Vieira v. Anderson (In re Beach First Nat'l Bancshares)*, 702 F.3d 772
(4th Cir. 2012) ...................................................................................................... 9

*Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527
(4th Cir. 2013) ...................................................................................................... 9

*Williams v. Ricoh Americas, Corp*., No. 1:15-CV-01255, 2016 WL 4926442 (E.D. Va. Aug. 2, 2016) ..........................................10

*Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017) ..................................10

**STATUTES**

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

42 U.S.C. § 2000e *et seq* ...............................................................1

Fed. R. Civ. P. 8(a)(2) ....................................................................9

Fed. R. Civ. P. 12(b)(6) ..................................................................9

## JURISDICTIONAL STATEMENT

This appeal arises from the motion to dismiss the Amended Complaint and final judgment of the United States District Court for the Eastern District of Virginia (Alexandria Division), issued June 20, 2024. (JA062). The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 2000e *et seq*. Plaintiff-Appellant, Maan Aljizzani ("Aljizzani"), timely appealed that ruling on July 17, 2024. (JA075-078). This Court has jurisdiction of the appeal from the final decision from the District Court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding on motion to dismiss that plaintiff-appellant Aljizzani failed to state a claim for national origin discrimination under 42 U.S.C. § 2000e *et seq*.?

2. Whether the district court erred when it concluded that Aljizzani had not met its burden at the pleading stage under 42 U.S.C. § 2000e *et seq*.?

3. Whether the district court erred in entering Defendant's motion to dismiss the Amended Complaint when it failed to treat as true, and the reasonable inferences therefrom, the facts alleged by plaintiff-appellant?

4. Whether the district court erred in not granting leave to amend the Amended Complaint?

## STATEMENT OF THE CASE

Aljizzani was previously employed by Middle East Broadcasting Networks, Inc.'s ("Defendant" or "MBN") and alleges claims for national origin discrimination in violation of Title VII of the Civil Rights Act of 1964. MBN filed a renewed motion to dismiss, which was granted by the district court. Aljizzani opposed their motion, and the Amended Complaint contained sufficient facts and circumstances for national origin discrimination that precluded the district court from granting the motion to dismiss. The sole issue MBN argues in its Renewed Motion to Dismiss is that Plaintiff's Amended Complaint is deficient because it fails to articulate a cognizable basis for the fourth element of the *McDonnell Douglas* framework, that Plaintiff experienced different treatment from similarly situated employees ("comparators") outside of his protected class.

The court erred in holding that Aljizzani failed to sufficiently plead a case for national origin discrimination under the *McDonnell Douglas* framework at the pleading stage. (JA073). The court erred in holding that Aljizzani failed to demonstrate that he was treated differently than similarly situated employees outside of his protected class. (JA073). The court erred in holding that Aljizzani could not be permitted leave to amend its [first] Amended Complaint. (JA074).

In so holding, the district court erred by not considering the facts and the reasonable inferences from facts presented in the light most favorable to Aljizzani.

Thus, in failing to consider facts in the light most favorable to Aljizzani, the non-moving party, the district court erred by failing to find that Aljizzani had presented evidence supporting a prima facie case for his national origin claim under Title VII. (JA073).

## STATEMENT OF FACTS

### A. Background

Plaintiff-Appellant, Man Aljizzani ("Aljizzani"), is an Iraqi-American journalist with MBN. (JA005). Plaintiff was employed by MBN as an investigative reporter for Alhurra TV beginning in December 2017. (JA007) On or about March 16, 2021 Aljizzani was terminated from his position with MBN. (JA007). MBN provides news and information via satellite television (Alhurra TV), radio (Radio Sawa) and multiple digital platforms. (JA006). MBN's headquarters is in Springfield, Virginia. (JA006). Plaintiff was an exemplary employee who at all times had positive performance assessments, and, he had won multiple awards for his investigative reporting while employed by MBN. (JA007).

When Plaintiff was terminated, his direct supervisor was Hussein El-Razzaz ("Mr. El-Razzaz"). (JA007). Plaintiff was also supervised by Amr El-Kahky ("Mr. El-Kahky"). (JA007). At the time of Plaintiff's termination, Kelley Sullivan ("Ms. Sullivan") was MBN's Acting President and Hassan Shwiki ("Mr. Shwiki") was MBN's Senior Vice President. (JA007). Plaintiff was ultimately supervised

3

by Ms. Sullivan and Mr. Shwiki.  (JA007).

All MBN Journalists are required to abide by MBN's Journalistic Code of Ethics (the "Code").  (JA007).  The Code is attached to Plaintiff's Amended Complaint as Exhibit A.  (JA014-020).  MBN Journalists are defined as those individuals who assign, write, report, edit, post, produce and broadcast news on any of MBN's platforms, including radio, television and digital media (hereinafter referred to as "Journalists").  (JA007).  As an investigative journalist for MBN, Plaintiff was an MBN Journalist.  (JA008).

**B. Alleged and Pre-Textual Ethics Code Violation.**

On March 6, 2021 Plaintiff tweeted "the owner of the house was an emaciated ghost, expressionless and emotionless, as if he were sitting upright in spite his aged body, amid the amazement, astonishment, and pity of the guest!" (JA008).  This tweet was posted the same day the Pope met with the Grand Ayatollah Ali al-Sistani.  (JA008).

Plaintiff's March 6, 2021 tweet did not mention or reference in any way Iraq, Grand Ayatollah Ali al-Sistani, or MBN. (JA009).  Plaintiff's Twitter profile did not state that he was employed by MBN. (JA009).  MBN claims Aljizzani was terminated because he violated the Code. (JA008).

4

**C. Comparators identified in Amended Complaint.**

i.    <u>Ms. Jebai and Ms. Bdewi (investigative reporters).</u>

MBN employed three investigative reporters at the time of Plaintiff's termination: Plaintiff, Randa Jebai (Non-Iraqi) ("<u>Ms. Jebai</u>") and Ghalia Bdewi (Non-Iraqi) ("<u>Ms. Bdewi</u>"). (JA009). Ms. Jebai and Ms. Bdewi had the same job responsibilities as Plaintiff. (JA009). Ms. Jebai and Ms. Bdewi were not hired to write opinion pieces or host opinion programs. (JA009).  Ms. Jebai and Ms. Bdewi had the same direct supervisor as Plaintiff, Mr. El-Razzaz. (JA009). Ms. Jebai and Ms. Bdewi were also supervised by Mr. El-Kahky, and ultimately by Mr. Shwiki and Ms. Sullivan. (JA009).  As MBN Journalists, Ms. Jebai and Ms. Bdewi were also subject to MBN's Code. (JA009).  Ms. Jebai and Ms. Bdewi are comparators to Plaintiff.  (JA009).

Both Ms. Jebai and Ms. Bdewi regularly post on social media. (JA009). Ms. Jebai and Ms. Bdewi have never received reprimands for violating MBN's Code. (JA009).

ii.    <u>Mr. Ghanem, Mr. Khawly, and Ms. Dehen (Other non-Iraqi journalists).</u>

Non-Iraqi Journalists Pedro Ghanem ("Mr. Ghanem"), Joe Khawly ("Mr. Khawly") and Tamara Abou Dehen ("Ms. Dehen") frequently tweet their political opinions without reprimand from MBN. (JA009).  Mr. Ghanem was also a reporter and had the same job responsibilities as Plaintiff. He was also supervised by Mr.

El-Kahky, Plaintiff's second-line supervisor. (JA009-010). While Mr. Khawly and Ms. Dehen were news anchors, they had similar job responsibilities as Plaintiff. (JA010). Mr. Ghanem, Mr. Khawly, and Ms. Dehen were also ultimately supervised by Mr. Shwiki and Ms. Sullivan. (JA010). Mr. Ghanem, Mr. Khawly and Ms. Dehen were MBN Journalists, who were hired to host opinion programs or to write opinion pieces. (JA010). As MBN Journalists, Mr. Ghanem, Mr. Khawly, and Ms. Dehen are subject to MBN's Code. (JA010). Mr. Ghanem, Mr. Khawly, and Ms. Dehen are comparators to Plaintiff. (JA009).

Mr. Ghanem, Mr. Khawly, and Ms. Dehen frequently tweet political opinions that should constitute violations of MBN's Code of Journalistic Ethics. (JA010). However, these tweets remain on their Twitter accounts, and they still are employed by MBN. (JA010).

**D. Atmosphere of Discriminatory Animus.**

By contrast, Iraqi Journalists Mr. Habib, Mr. Nabil, Mr. Nasser, and Mr. Al-Hamdani received verbal reprimands in March 2021 for tweeting political opinions that allegedly violated MBN's Code. (JA010). MBN terminated Mr. Habib and Mr. Nabil in September 2021, with the vague explanation that Mr. Habib and Mr. Nabil violated MBN's Code. MBN gave no further explanation and did not point to any content that allegedly violated MBN's Code. (JA010). Although Plaintiff, Mr. Habib, and Mr. Nabil were allegedly terminated for violating MBN's Code

6

they were actually terminated on the basis of their national origin. (JA010). There

was an atmosphere of discriminatory atmosphere at MBN against Iraqi Journalists.

(JA010).

## SUMMARY OF ARGUMENT

Based on the facts alleged in the Amended Complaint, the district court

erred in granting MBN's motion to dismiss, and dismissing the Amended

Complaint with prejudice. In considering a motion to dismiss the court is required

to consider all facts in the light most favorable to the non-moving party, drawing

all reasonable inferences in favor of the non-moving party, in this case Aljizzani.

The court erred when it held that Aljizzani failed to sufficiently plead a case

for national origin discrimination under the *McDonnell Douglas* framework for

failing to demonstrate that similarly situated employees outside the protected class

received more favorable treatment. (JA073-074).

First, Aljizzani identified two non-Iraqi journalists (Ms. Jebai and Ms.

Bdewi) who had the same exact position title and direct supervisor. Aljizzani

identified that those individuals post on social media. Aljizzani identified that

those individuals have not been reprimanded. Notably, the argument of Aljizzani

is not that his March 6, 2021, twitter post violated the Code. Aljizzani's contention

is just the opposite. It is not a violation whatsoever, much like the other Iraqi

journalists who post non-violation content but are reprimanded using the "Code"

regardless. (JA010).

Second, Aljizzani further identified additional non-Iraqi journalists (Mr. Ghanem, Mr. Khawly, and Ms. Dehen) who were also bound by the Code. In this circumstance Aljizzani identified them as actually posting clear code violations with no recourse by MBN. (JA009-010).

As such, short of actually comparing twitter posts verbatim, Plaintiff has identified specific individuals by name who could all easily be considered comparators that are engaging in either the same (or worse) conduct, who were being treated markedly different than Iraqi journalists (Aljizzani).

In addition, Aljizzani goes further and indicates that he alone is not being targeted, but a multitude of Iraqi journalists are being targeted. Specifically identifying 4 other Iraqi journalists. (JA009-010). In some two particular cases resulting in termination, they gave no explanation and did not point to any content that allegedly violated MBN's Code. (JA010). These facts are sufficient to support an argument that there was an atmosphere of discriminatory animus.

Finally, if the Court determined that nothing short of actual side by side analysis of the verbatim social media postings were required (which are not), then Plaintiff could have provided them. Not surprisingly, given that Plaintiff has asserted many of the posts have been made and are still posted, Plaintiff possesses numerous example postings by the comparators identified. As such, if that was the

request of the Court, Aljizzani could have amended and added the actual posts themselves. Thus, assuming arguendo that was required, Aljizzani should have been granted leave to amend his pleading to attach sample posts.

## STANDARD OF REVIEW

"Appellate courts review a district court's dismissal of an action under Fed. R. Civ. P. 12(b)(6) de novo. When reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, appellate courts accept all factual allegations in the complaint as true. Appellate courts review questions of law de novo." *Vieira v. Anderson (In re Beach First Nat'l Bancshares)*, 702 F.3d 772, 775 (4th Cir. 2012)(internal citations omitted).

## ARGUMENT

A complaint need only contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The pleading requirements remain the same, "[i]n the context of a Title VII employment discrimination claim, to survive a motion to dismiss, the plaintiff need not plead a prima facie case of discrimination; instead, the plaintiff is required to plausibly state a violation of Title VII that rises above a speculative level. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)(emphasis added) (citing *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015); and *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)); *See also Woods v. City of Greensboro*, 855 F.3d 639, 650-51 (4th Cir. 2017) (evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at the motion to dismiss stage); *see also id*. at 652 ("[D]iscrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery.").

Aljizzani has set forth a prima facie case for discrimination as well. Typically, in order to establish a prima facie case of national origin discrimination, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Williams v. Ricoh Americas, Corp*., No. 1:15-CV-01255, 2016 WL 4926442, at *4 (E.D. Va. Aug. 2, 2016). In its renewed motion to dismiss MBN takes issue with only element (4).

10

**A.    Aljizzani was treated differently from similarly situated employees.**

"… [A]n appropriate comparator must be similar to the plaintiff in all relevant respects. However the similarly-situated requirement is phrased, it is meant to be 'flexible, common-sense, and factual.'" *Tinsley v. City of Charlotte*, 854 F. App'x 495, 510 (4th Cir. 2021). In the present case, Plaintiff has gone well beyond plausibly asserting a violation that goes over the speculative level. Plaintiff has gone so far as to actually name several individuals directly, two of them with the exact same job title and supervisor.

i.    Comparators with the Same Supervisor, Job Title, and Job Duties.

In the present case, Aljizzani identified two comparators who shared the same supervisor, job title, were bound by the MBN Code, and it was identified that they had the same job responsibilities as Plaintiff. In its memorandum opinion, the Court appeared to indicate that this was insufficient. (JA069-070)("But, Plaintiff only alleges generally that they 'had the same job responsibilities as Plaintiff,' without additional facts to support this assertion."). Respectfully, the Court erred in this analysis. The Plaintiff has identified same supervisor, job title, application of the Code, same job responsibilities (beyond even the same title). As such, plaintiff has more than met its pleading burden to plausibly state a violation of Title VII that rises above a speculative level. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)(emphasis added).

11

Further, in its memorandum opinion the Court also asserts that "Plaintiff fails to allege that Jebai and Bdewi's social media posts actually violated MBN's Code. According to MBN's Code, only "inflammatory or otherwise inappropriate" posts are prohibited. Plaintiff does not allege that either Jebai or Bdewi posted an inflammatory or inappropriate post on social media such that they should have been reprimanded." (JA069). Respectfully, the Court erred in this analysis. The Court appears to infer the fact that Aljizzani's posting actually violated the Code. It does not. At all. At a minimum, we do not assert this and would never wish to draw that inference against us from the facts alleged. To the contrary, the Amended Complaint asserts that Aljizzani did not understand what was wrong with the content. (JA008). Thus, the comparison is not to a similarly situated employee who ALSO violated the Code. The comparison is to a similarly situated employee who ALSO did NOT violate the Code.[1] In the case of Aljizzani, he was terminated for posting on social media despite NOT violating the Code. His comparators were NOT terminated for posting on social media despite NOT violating the Code. However, all parties do post on social media, but only Aljizzani was terminated.

---

[1] Although admittingly not pled in the Amended Complaint, the posts by the comparators are far more targeted and aggressive than the innocuous post of Aljizzani.

ii.    <u>MBN Journalists without the same direct supervisor.</u>

In this case, the critical issue is conduct taken by journalists outside of their work. Specifically, social media posts. In this case, the single most relevant factor for comparison is that they are journalists bound by the Code and that it is not being enforced against them the same way. The type of journalist and/or their supervisor doesn't make a difference. This is why other Iraqi journalists (with different supervisors) were also targeted.

> "In one recent inferential discrimination case, we required plaintiffs to 'share the same supervisor,' among other things. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (relying on *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). But that requirement (as the progeny of *Mitchell* have long noted) 'does not automatically apply in every case' and is not a bar to relief in a case like this one, where the comparators are otherwise similar in 'all relevant respects.' *See McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005); *see also Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (same-supervisor requirement does not apply to all factual situations; rather, comparators must be similar in 'relevant aspects'); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (finding that imposing a strict same-supervisor requirement in an ill-fitting case was error; instead, comparators must be similar 'in all material respects'); *cf. Eaton v. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (stating that a comparator sharing the same supervisor is only 'generally' required and noting that the similarly-situated requirement 'ought not be construed so rigidly or inflexibly that it [becomes] a useless analytical tool' (quoting *South v. Ill. Env't Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007)); *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) ('[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.')." *Tinsley v. City of Charlotte*, 854 F. App'x 495, 510-11 (4th Cir. 2021).

In his Amended Complaint, Aljizzani actually identified three MBN Journalists who post content that actually does violate the Code, but they have not been reprimanded and the tweets remain. Again, Aljizzani never asserts in his Amended Complaint that his post violated the Code. Nonetheless, the Amended Complaint asserts that MBN Journalists bound by the Code are actually violating the Code without any issue from MBN. Conversely, Plaintiff was terminated for a tweet that does not even violate the Code. Similarly, other Iraqi journalists, who have not violated the Code, have been terminated by MBN who used the Code as the reason, but with no explanation of why or what content identified as the basis.

The District Court asserts that Plaintiff should have stated with particularity the job duties of any comparators and submitted the tweets for comparison. This requirement would go well beyond the notice pleading standard, especially in a Title VII case. Again, this is being assessed at the motion to dismiss stage. The facts pled in the Amended Complaint more than plausibly establish facts beyond the speculative level. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)(emphasis added). A detailed factual recitation comparing and illustrating all tweets for comparison and every similarity in the conduct of their position is appropriate for trial or summary judgment, but not at the pleadings stage.

iii.    <u>Assuming Arguendo detailed job descriptions and verbatim posts were required, leave to amend should have been granted.</u>

Plaintiff asserts that it was error by the District Court to require pleading of detailed descriptions of the various jobs of comparators and exact postings for comparison, nonetheless, Plaintiff could have done this. Thus, assuming arguendo the Amended Complaint was deficient in these explanations and details, Plaintiff could have amended to include them. There had only been one prior amendment and this was the very beginning of the matter. As the Court noted in its memorandum opinion, "…leave to amend a pleading should be denied only when the amendment . . . would have been futile[]." (JA073). In this case, it would not have been futile as those facts are in the possession of Plaintiff and have been throughout the entire litigation. However, as indicated herein, Aljizzani does not believe that significant level of detail is required to properly plead a Title VII claim.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court as to all counts and remand for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a) Plaintiff-Appellant hereby respectfully requests oral argument in this matter. Oral argument is appropriate because the issues in this case are significant to the parties, employees as well as employers.

15

Respectfully submitted,

MAAN ALJIZZANI

By Counsel:

_/s/ Dirk McClanahan_____
Dirk McClanahan, Esq. (VSB# 81208)
McClanahan Powers, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Phone: (703) 520-1326
Email: dmcclanahan@mcplegal.com
*Counsel for Plaintiff- Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, TYPE FACE REQUIREMENTS & TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

   _ X _: This brief contains approximately _ 3,427 _ words, excluding the parts of the brief exempted by the Federal Rules of Appellate Procedure 32(a)(7)(B)(iii), or


2. This brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   _ X _: This brief has been prepared in a proportionally spaced typeface using MS Word 2010 in a 14-point Time New Roman font.

_ /s/ Dirk McClanahan _____
**Counsel for Plaintiff-Appellant**
September 24, 2024

17